UNITED STATES COURT OF APPEALS

**Filed 6/5/96** TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,      )
                               )

       Plaintiff-Appellee,            )
                               )

       v.                              )      No. 95-3322
                               ) (D.C. No. 93-10016-01)

JAMES C. SHAW,                 )        (Dist. Kan.)
                               )

       Defendant-Appellant.       )
                               )

_____

ORDER AND JUDGMENT[*]

_____

Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant James C. Shaw appeals the denial of his pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We affirm in part and remand in part for additional findings concerning the voluntariness of Shaw's guilty plea and the government's compliance with the terms of the plea agreement.

I.

On February 24, 1993, a federal grand jury returned an indictment charging Shaw

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

with one count of conspiracy to possess with intent to distribute approximately four ounces of cocaine base and three ounces of cocaine powder, in violation of 21 U.S.C. § 846, and one count of knowingly possessing with intent to distribute approximately four ounces of cocaine base and three ounces of cocaine powder, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

On July 8, 1993, pursuant to the terms of a written plea agreement with the government, Shaw entered a plea of guilty to count one of the indictment (conspiracy). He was represented by retained counsel throughout these proceedings, from arraignment through plea and sentencing. In return for his plea of guilty, the government agreed to recommend a sentence at the low end of the guideline range, as calculated by the probation office, but no lower than the applicable statutory minimum. The applicable statutory minimum is not set forth in the written plea agreement. The government further agreed to recommend that Shaw receive a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The plea agreement did not set forth the applicable guideline or penalty range, nor was there any agreement to depart from the guideline range because of Shaw's assistance and cooperation.

On September 29, 1993, Shaw was sentenced by the district court. In reliance upon the probation office's report, the court began with a base offense level of 32 as a result of Shaw's violation of 21 U.S.C. § 846 and the amount of drugs involved in the violation. A two-level increase was imposed due to his possession of three semi-automatic handguns and his acknowledgment that the guns were present during his drug trafficking activities. In accordance with the plea agreement, Shaw was afforded three points for acceptance of responsibility, resulting in a total offense level of 31.

2

Continuing, the court concluded the career offender provisions of U.S.S.G. § 4B1.1 were applicable because the charged offense was a felony involving a controlled substance, and because Shaw had at least two prior felony convictions involving crimes of violence. Accordingly, the court found an offense level of 37 was required under the guidelines. The court acquiesced in a three-point reduction as a result of Shaw's admission of guilty and acceptance of responsibility. This left Shaw with a total offense level of 34, a criminal history category of VI, and a resulting guideline range of 262 to 327 months. The court sentenced Shaw to 262 months (21 years, 10 months), the lowest possible sentence within the guideline range. Shaw was also sentenced to 5 years supervised release, was denied federal benefits for 5 years, and was fined $1,000.

Although Shaw did not file a direct appeal, on June 26, 1995, he filed a pro se motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. All parties agree this is his first § 2255 motion. In his motion, Shaw argued that (1) his plea and conviction were unlawful because his plea was not given knowingly and intelligently, and the court failed to make sufficient inquiry under Fed. R. Crim. P. 11; (2) the government failed to abide by the terms of the plea agreement because his sentence was enhanced under the career offender provisions; (3) he was unlawfully sentenced as a career offender because the conspiracy conviction to which he pled guilty was outside the scope of offenses punishable under the career offender guidelines; and (4) his attorney was ineffective because he failed to insure that the guilty plea was knowing and voluntary. In addition to these arguments, Shaw requested an evidentiary hearing and appointment of counsel.

On July 6, 1995, the court authorized Shaw to proceed in forma pauperis and

3

directed that the transcript of his plea and sentencing be made available. The court also provided copies of Shaw's § 2255 motion to his initial counsel of record and to the government, and ordered each to respond to the motion within 30 days. After receiving responses from both counsel, and without an evidentiary hearing, the court issued its order denying the motion on September 6, 1995. The court concluded "[t]he sentence imposed was fully consistent with the provisions of the guidelines, was fairly calculated, and was warranted." R I, Doc. 149 at 4. Further, the court concluded it was "nonsense" for Shaw to argue he was denied due process, that the sentence was outside the scope of his offenses, that the plea proceeding was flawed, or that the plea was not intelligently entered. In particular, the court noted that, at the time of his plea, "defendant expressed awareness of everything involved with regard to his guilt as well as the prospective sentences" and fully understood that, under the terms of the agreement, his sentence would not be tempered. Id. Moreover, the court concluded the government fulfilled its commitment under the agreement and the agreement was honored by the court at sentencing. Finally, the court concluded it was "nonsense" for Shaw to suggest he was somehow denied effective assistance of counsel.

## II.

The primary focus of Shaw's attack is on the validity of his guilty plea. He claims the plea was "constitutionally infirm" because the district court failed to comply with Fed. R. Crim. P. 11(c), which provides:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release

4

term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and

(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and

(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and

(5) if the court intended to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

In particular, Shaw claims the court failed to inform him of (1) his right to plead not guilty; (2) his right against compulsory self-incrimination; (3) his right to confront his accusers in open court; (4) his right to call witnesses in his own behalf; (5) his right to assistance of counsel at trial; and (6) the minimum and maximum terms of confinement he was facing. In short, Shaw claims the plea was involuntary because he was not fully aware of the consequences of the plea, and he might not have pled guilty had he been fully apprised of the consequences. Shaw also argues 28 U.S.C. § 2255 requires an evidentiary hearing "unless the files and records conclusively show that the movant is not entitled to any relief." R I, Doc. 142 Memorandum at 2 (quoting 28 U.S.C. § 2255).

In order to be valid, a defendant's guilty plea must be knowing and voluntary, and the product of a deliberate, intelligent choice. Parke v. Raley, 506 U.S. 20, 28 (1992). Rule 11 imposes a duty on the court to address a defendant on the record and determine if the defendant understands the full consequences of the plea. See United States v. Elias, 937 F.2d 1514, 1517 (10th Cir. 1991); United States v. Williams, 919 F.2d 1451, 1456

5

(10th Cir. 1990) ("to determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea"), cert. denied 499 U.S. 968 (1991).

We review de novo a district court's compliance with Rule 11 before accepting a guilty plea. Elias, 937 F.2d at 1517. If a variance from Rule 11 does not affect the defendant's substantial rights, it is considered harmless error and "shall be disregarded." Fed. R. Crim. P. 11(h). See United States v. Browning, 61 F.3d 752, 753-54 (10th Cir. 1995). In this regard, we have construed the Rule 11(h) language as requiring a defendant to show that knowledge of the variance "'*would have* changed his decision to plead guilty.'" United States v. Wright, 930 F.2d 808, 810 (10th Cir. 1991) (quoting United States v. Gomez-Cuevas, 917 F.2d 1521, 1527 (10th Cir. 1990)).

Here, the transcript of the plea indicates the court briefly discussed the nature of the charges pending against Shaw and informed him of his right to plead not guilty and have the matter submitted to a jury. Further, the court informed him that, if the guilty plea was accepted, he would waive his right to a trial. With respect to the applicable penalty provisions, the following colloquy took place:

> THE COURT: All right. Has anybody explained to you what the sentencing guidelines might suggest, even in the face of such a plea bargain?
> DEFENDANT: Yes, Your Honor.
> THE COURT: What do you understand it to be?
> DEFENDANT: Go on my past criminal activity and willingness to cooperate in this case.
> THE COURT: All right. Have you taken any reasonable calculations at all as to whether it involves incarceration or what, Mr. Miller [defense counsel]?
> MR. MILLER: Your Honor, with the record and with the maximum-minimum, I have told him we could be looking at from 10 to 15 years.
> THE COURT: That much?
> MR. MILLER: Yes, sir.
> THE COURT: Do you understand that, Mr. Shaw?
> DEFENDANT: Yes, sir.

THE COURT: All right. Nobody has made any promises then as to what I would likely do, except to say that I will abide by the plea bargain. All right?
DEFENDANT: All right.

Supp. R I at 5-6.

Because the district court did not inform Shaw that he was facing a maximum statutory penalty of life imprisonment, and because the 21-year 10-month sentence ultimately imposed upon defendant was substantially greater than the 15-year sentence estimated by defense counsel at the time of the plea, we cannot conclude on the record before us that the requirements of Rule 11(c)(1) were satisfied. We must decide whether this variance affected Shaw's substantial rights. Although the record on appeal contains a formal response from defense counsel alleging he informed Shaw prior to his plea of the maximum penalty, the court made no reference to this response in its order and made no specific findings of facts with respect to the question of whether Shaw was aware of the maximum penalty at the time he entered his guilty plea. In its appellate brief, the government also refers to a Petition to Enter a Plea of Guilty which was signed by Shaw before he entered his plea. The petition is not a part of the record on appeal, and the court made no specific reference to it in addressing the specific arguments asserted by Shaw. Further, a defendant's signing of a petition to enter a plea of guilty is not always a sufficient substitute for the personal examination required by Rule 11(c). See, e.g., United States v. Medina-Silveria, 30 F.3d 1, 4 (1st Cir. 1994) (total failure to conduct Rule 11 plea colloquy not harmless even where petition to enter plea of guilty evidenced defendant's apparent cognizance of Rule 11 information).

Accordingly, we find it necessary to remand this matter to the district court for appointment of counsel and for an evidentiary hearing to determine whether Shaw's plea

was knowingly and voluntarily entered. This inquiry will necessarily involve the related issue of whether Shaw's counsel was ineffective in failing to insure his plea was knowingly and voluntarily entered. Within its general inquiry of whether Shaw's plea was knowingly and voluntarily entered, the court should include a specific inquiry into whether Shaw was aware of the maximum penalty he was facing at the time he entered his guilty plea. If Shaw was not aware of the maximum penalty, or if there were other areas of noncompliance with Rule 11, the court should also determine whether any of these failings significantly impacted his decision to plead guilty.

III.

Shaw further asserts the government violated the terms of the plea agreement. Specifically, he claims the government violated its promise to recommend a sentence no higher than 15 years and to not pursue any sentencing enhancements.

Whether government conduct constitutes a violation of a plea agreement presents a question of law subject to de novo review. United States v. Robertson, 45 F.3d 1423, 1442 (10th Cir. 1995), cert. denied, 115 S.Ct. 2258 (1995). "Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." United States v. Hand, 913 F.2d 854, 856 (10th Cir. 1990); see also Santobello v. New York, 404 U.S. 257, 262 (1971). "'Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence.'" United States v. Stemm, 847 F.2d 636, 637 (10th Cir. 1988) (quoting United States v. Reardon, 787 F.2d 512, 516 (10th Cir. 1986)).

To determine whether the government has violated the terms of a plea agreement,

we examine the nature of the prosecutor's promise based upon what the defendant reasonably understood when the guilty plea was entered. Robertson, 45 F.3d at 1442. In so doing, we must refrain from adopting a "rigidly literal approach" in the construction of the plea agreement language. United States v. Greenwood, 812 F.2d 632, 635 (10th Cir. 1987).

Based upon the limited and conflicting evidence contained in the record on appeal, we are unable to determine Shaw's reasonable understanding of the agreement at the time he entered his plea. Although the bare-bones language of the written plea agreement can be literally construed to indicate there were no promises on the part of the government concerning the length of sentence, the transcript of the plea hearing suggests that both Shaw and his counsel believed Shaw would receive a sentence of 10 to 15 years. Unfortunately, neither the district court nor the prosecutor said anything during the plea hearing to dispel this apparent belief. Moreover, the written plea agreement is noticeably silent, and thus arguably ambiguous, with respect to the issue of sentence enhancements (e.g., career offender enhancements). See generally United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990) (ambiguous plea agreements to be read against the government).

Accordingly, we remand this issue to the district court for further consideration. Because we have already directed the district court to conduct an evidentiary hearing to determine whether Shaw's plea was knowingly and voluntarily entered, the district court should include within the scope of that hearing a determination of the terms of the plea agreement. The court should conduct a specific inquiry into the negotiations between the government and Shaw leading to the signing of the written plea agreement. After

objectively determining the terms of the plea agreement, the court must also decide whether the agreement was violated by the government.

## IV.

Finally, Shaw argues it was improper for the district court to sentence him as a career offender because the statutory authority under which the Sentencing Commission adopted the career offender guidelines did not authorize extension of those guidelines to conspiracy offenses. We rejected a similar argument in United States v. Allen, 24 F.3d 1180, 1185-87 (10th Cir. 1994) (Sentencing Commission had discretion to authorize enhanced career offender sentences for defendants based upon current or prior drug conspiracy convictions), cert. denied, 115 S.Ct. 493 (1994), and find no reason to revisit the issue in this case.

## V.

We AFFIRM in part, and REMAND in part to the district court for appointment of counsel and an evidentiary hearing consistent with this order.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

10